(No. 12678.—Judgment affirmed.)
GEORGE S. MEPHAM & Co., Defendant in Error, *vs.* THE
INDUSTRIAL COMMISSION *et al.*—(ALICE STEPHENS,
Admx. Plaintiff in Error.)

*Opinion filed October 27, 1919.*

1. WORKMEN'S COMPENSATION—*burden is on claimant to prove accident arose out of and in the course of employment.* The burden is on the claimant for compensation to prove by direct and positive evidence, or by evidence from which such inference can be fairly drawn, that the accident arose out of and in the course of the employment.

2. SAME—*injury to an employee while acting as a volunteer does not arise out of the employment.* · An injury to an employee while engaged in a voluntary act not accepted by or known to the employer and outside the duties for which he is employed does not arise out of his employment.

3. SAME—*who is a volunteer.* A volunteer is one who introduces himself into matters which do not concern him, by doing or undertaking to do something which he is not bound to do, which he has not been in the habit of doing with his employer's knowledge or consent, which is not in pursuance of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as in an emergency.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

W. L. COLEY, for plaintiff in error.

GALLAGHER, KOHLSAAT & RINAKER, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a writ of error to review the judgment of the circuit court of St. Clair county quashing the award of the Industrial Commission awarding $8 a week for 416 weeks to Alice Stephens, administratrix of the estate of F. C.

Stephens, deceased, the trial court having certified that the cause is one proper to be reviewed by this court.

It is stipulated that on September 12, 1917, F. C. Stephens and George S. Mepham & Co. were working subject to the terms of the Compensation act; that on said date Stephens was in the employ of the defendant in error and received an injury from which he died on the 18th of September, 1917; that defendant in error had notice of the accident; that demand for compensation was made as required by statute; that deceased left surviving him Alice Stephens, his widow, and Kimball Stephens, his sixteen-year-old son; that he was fifty-three years of age, and that during the twelve months immediately prior to the injury his average weekly wage was $16.

Defendant in error conducted a paint factory in East St. Louis, Illinois. Deceased operated two paint mixers, known in the trade as "chasers." The two chasers operated by deceased were on the south side of the room. At the west end of the room was one known as the "A-B chaser" and at the east end of the room was one known as the "C-D chaser." They were about fifty feet apart and were driven by belts from a line shaft which ran through the room from east to west, considerably higher than a man's head. Immediately below this line shaft, and running in the same direction across the room, was a concrete walk. On the north side of the room, at the east end, opposite the C-D chaser, was another paint mixer, called a "dry chaser." It was driven by a belt running from the same main shaft. The A-B and C-D chasers were used to mix wet paint and did not require so heavy a belt as the chaser used to mix dry paint. It was the duty of deceased to attend the A-B and C-D chasers, to keep material in them and to draw off the mixture. Millwrights were employed by defendant in error to keep the belts in condition. Deceased had nothing to do with the belts and was not supposed to keep them in order. On the day of the injury he

was attending his two mixers. In passing from one to the other he walked on the concrete walk, directly under the line shaft. The belt running from the line shaft to the dry mixer broke. It was repaired by the millwright, and the foreman, Jacob Tipton, called August Roberts, the workman who had charge of the dry mixer, and another workman, Chauncey Tipton, to assist him in putting the belt back on the pulley. The foreman stood upon a platform above the heads of these two workmen so that he could handle the belt on the line shaft. When they got the belt on the pulley it was found that there was a half-turn in the belt, and the foreman directed Roberts to get a piece of gas pipe and throw the belt off. Roberts got the pipe, and he and Tipton put it against the belt above their heads and tried to push the belt off but did not succeed. At this instant the deceased, walking from his A-B chaser toward his C-D chaser, approached these men and saw that they were having difficulty in getting the belt off. He walked up to Roberts and took the pipe out of his hand, saying, "Give me that pipe and I will show you how to get that belt off." As soon as the foreman saw what he was about, he shouted to him, "Don't do that!" but deceased had gone too far. The belt jerked the pipe into the pulley and deceased was raised off his feet and thrown to the floor. His skull was crushed and he was knocked unconscious. It was from this injury that he died.

All the evidence in the record was offered by the administratrix. It is the testimony of the fellow-employees of deceased. The whole incident happened much quicker than it can be told, and so the testimony is very brief. The foreman testified that when deceased took the pipe out of Roberts' hand and made the remark that he would show them how to get the belt off he did not realize for a moment what deceased was going to do, but that as soon as he did he told him not to do it; that deceased put the pipe against the edge of the pulley on the main shaft to throw

the belt off, and the pipe caught, whirled him around and struck him; that he was standing on the platform, near deceased; that all was done so quickly that he did not have time to know whether anyone was hurt or who was hurt until he had come down from the platform, when he saw deceased lying on the floor. He further testified that when the belts came off their pulleys the foreman or the millwright replaced them, and if help was needed they called on some one of the workmen to assist; that the workmen never adjusted the belts without being told to do so by the foreman; that deceased never helped with the belts, and that he did not call on deceased to help put on these heavy belts because deceased was too old; that the belt which was being repaired was not the one that operated either chaser of which deceased had charge but was the belt that drove the dry chaser, which was in charge of Roberts.

August Roberts testified that he saw the occurrence just as the foreman described it; that deceased came up to him and took the rod out of his hand and said, "Let me have that rod; I will throw it off;" that no one had asked him to help but that he volunteered; that no one ever helped on that belt unless told to do so by the foreman.

John Nelson, who worked in the same room, testified that he saw deceased take the pipe out of Roberts' hand and put it against the belt; that the belt drove the pipe against the pulley, and that the foreman, who was on the platform, shouted to him not to do that; that the belt jerked the rod under the pulley and the rod jerked deceased up, and he fell on the floor. He further testified that when the belts came off the foreman or the millwright put them on, and that when they had difficulty with the belt they called whomever they wanted to help with the belt; that he had helped put belts on when ordered to do so; that he had seen deceased help with the belts when so ordered; that in this instance he did not hear deceased ordered to help with the belt, but that when deceased took the rod and started to pry the belt

off, he heard the foreman cry out, "Don't! Don't!" He indicated the short time in which the accident happened by crossing his hands twice and saying, "It was just like doing this way and that way." He further testified that the taking of the rod by the deceased and the placing of it in the belt seemed to happen almost at the same time.

There is no difficulty in determining the facts in connection with this injury, but the difficulty presented is in applying the established principles of law laid down in cases of this character to the facts so determined. Counsel for defendant in error have cited no authorities in support of their contentions and have rendered no assistance to the court in determining legal questions here presented. *Gillespie* v. *Rout,* 40 Ill. 58.

It is conceded that this death was accidental, but the question is, does the proof tend to show that the death occurred while deceased was reasonably fulfilling the duties of his employment or engaged in doing something incidental to it? The burden is on the applicant to prove that the accident arose in the course of and out of the employment by direct and positive evidence or by evidence by which such inference can be fairly drawn. (*Wisconsin Steel Co.* v. *Industrial Com.* 288 Ill. 206.) The adjudicated cases, American and English, so far as we are informed, universally hold that an injury to an employee while engaged in a voluntary act not accepted by or known to the employer and outside the duties for which he is employed cannot be said to arise out of his employment. *Central Garage* v. *Industrial Com.* 286 Ill. 291.

Counsel for plaintiff in error relies on *Alexander* v. *Industrial Board,* 281 Ill. 201, and *Mueller Construction Co.* v. *Industrial Board,* 283 id. 148. These cases are clearly distinguishable from the one at bar. In the *Alexander case* the workman was employed by a private contractor to unload stone from cars on a team track near elevated railroad tracks, and was invited by the yardmaster of the railroad

company to enter on the tracks and board a slowly moving cut of cars in order to get tools and work clothing out of a car where the workman had left them the night before, on leaving the car partially unloaded. While crossing the tracks he was killed by an express train. There the injury was held to arise out of the employment because it was customary for the workmen to leave tools in partially unloaded cars and to recover them in case the cars were moved during the night, where it was necessary to make use of the tools in unloading stone from other cars. In the *Mueller case* a carpenter foreman was struck and injured by an automobile while crossing a street for the purpose of using a telephone. It was part of his duty as foreman to order materials for the day's work, and because there was no telephone in the building where he was employed it was necessary for him to use a telephone across the street. It was there held that he was injured in the course of his employment and that the injury arose out his employment. In the instant case deceased was neither required nor expected to assist in adjusting this belt. The foreman had called two men to help and it is apparent no more were needed. It was merely a question of time until the belt would have been adjusted. There was no emergency. The condition of that belt did not affect the part of the work which deceased was employed to do. Deceased here volunteered his services, and before his foreman could command him not to perform the service he had placed himself in such a position that he could not save himself from the injury. A volunteer is one who introduces himself into matters which do not concern him and does or undertakes to do something which he is not bound to do, which he has not been in the habit of doing with his employer's knowledge or consent, or which is not in pursuance of any interest of the master and which is undertaken in the absence of any peril requiring him to act as on an emergency. This case is controlled by our holding in *Dietzen Co.* v. *Industrial Board*,

279 Ill. 11. We there reviewed at length cases on this subject, and reference is had to our discussion of those cases for further reasons for our holding in this case. The principles there announced are further discussed and approved in *Central Garage* v. *Industrial Com. supra,* and *Nelson Construction Co.* v. *Industrial Com.* 286 Ill. 632.

As it appears from the testimony of the fellow-employees of deceased that deceased was volunteering his services and was of his own volition intermeddling with something entirely outside the work for which he was employed, the judgment of the circuit court must be and is affirmed.

*Judgment affirmed.*