CLIFFORD MOCK, Plaintiff-Appellee, *v.* SEARS, ROEBUCK AND CO.,
Defendant-Appellant.

First District (2nd Division)    No. 80-2546

Opinion filed October 20, 1981.

Arnstein, Gluck & Lehr, of Chicago (Arthur L. Klein, Paul L. Leeds, and
Robert W. Boos, of counsel), for appellant.

Gorham, Metge, Bowman & Hourigan, of Chicago (Robert J. Hourigan and
Edward H. MacCabe, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Clifford Mock brought an action to recover damages for personal
injuries allegedly caused by the negligence of Sears, Roebuck and
Company. Defendant Sears moved for a directed verdict at the conclu-
sion of plaintiff's case and again at the close of all the evidence. Both

motions were denied, and the jury returned a $2,000 verdict for plaintiff. Defendant appeals, contending that the trial court applied the wrong standard of care (the jury was instructed on negligence rather than willful and wanton misconduct), and that plaintiff was contributorily negligent as a matter of law.

On March 31, 1973, plaintiff and his son traveled to the Sears store in St. Charles, Illinois, to pick up kitchen cabinets that had been ordered earlier. Following the instructions of Sears personnel in the catalog department, plaintiff proceeded to drive to the customer pickup area located at the back of the building. A loading platform approximately 10 feet square and elevated about 4 inches from the ground is stationed immediately outside the double doors of the customer pickup entrance. On the west side of the platform, to the right when exiting the building through the double doors, is a steel ramp permanently affixed to the platform. On the south side of the platform, facing away from the double doors, is a steel ramp approximately 4 feet long and 8 feet wide. This 250-pound ramp is attached to the platform by steel hinges that allow the ramp to be moved from a down position (bridging the gap between the ground and the platform) to an up position (slightly off the perpendicular, leaning towards the building). Plaintiff testified that on the morning of March 31, a movable garbage dumpster was positioned just east of the loading platform. Sears' assistant store manager William Huberty's automobile was parked just west of the platform, next to the permanent ramp. The movable ramp was in the up position when plaintiff arrived at the pickup area.

After squeezing between Huberty's car and one of the two poles located on either side of the platform, plaintiff and his son rang the bell outside the double doors. Huberty opened the doors and invited plaintiff and his son inside. After the cabinets were located, plaintiff asked Huberty to move his car so the cabinets could be carried out to the parking lot. Huberty, who was talking to a female employee, said his car did not have to be moved and that the truck ramp (the movable ramp) could be used. According to plaintiff, Huberty then returned to his conversation with the employee.

Huberty, who was no longer employed by Sears at the time of trial, testified that he told plaintiff that he (Huberty) would lower the ramp and load the cabinets into plaintiff's car. Huberty further testified that, shortly thereafter, he noticed plaintiff's son attempting to lower the ramp and that plaintiff told his son to cease such attempts. Huberty then observed plaintiff attempt to lower the ramp while standing on the platform. Fearing this would break the hinges, plaintiff repositioned himself in front of the ramp and attempted to lower it to the ground by pulling it toward himself. Plaintiff had earlier noticed lines in the pavement apparently

made by the ramp when it was in the down position. He originally placed his feet behind the line in the pavement, but admitted he put his right foot over the line in order to get a better grip on the ramp. The ramp, which was wet from the rain earlier that morning, slipped from plaintiff's hands and landed on his right foot. Plaintiff hobbled to his car and discovered that two toes on his right foot were severely injured.

Plaintiff's theory is that Sears was negligent in creating a situation where plaintiff's alternatives were to wait for Huberty to finish his conversation and lower the ramp or to lower the ramp himself. Plaintiff asserts that Huberty authorized him to lower the ramp himself, an assertion which Huberty denies. The case was submitted to the jury with instructions on negligence. The jury returned a $2000 verdict in favor of plaintiff.

Defendant's first contention on appeal is that the trial court erroneously characterized plaintiff as an invitee, rather than a volunteer, and thereby applied a higher standard of care than was warranted. Specifically, defendant argues that the trial court should have directed a verdict for defendant or granted defendant's motion for a judgment notwithstanding the verdict. Motions for directed verdicts and for judgments notwithstanding the verdict are to be assessed, both by the trial court and the reviewing court, under the standard set out in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Such motions should be granted only when all the evidence, when viewed in a light most favorable to the party opposing the motion, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick*, at 510.) This is the standard to be applied here.

The owner or occupier of land owes to invitees present on that property the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe. (*Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 59, 375 N.E.2d 180.) An owner or occupier of land violates his duty to an invitee when he negligently allows conditions to exist on the property which imperil the safety of persons on that property. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 158, 125 N.E.2d 47.) On the other hand, with respect to a volunteer, owners or occupiers have a duty only to refrain from gross negligence, willfulness or wantonness. (See *Augsburger v. Singer* (1968), 103 Ill. App. 2d 12, 14-15, 242 N.E.2d 436.) Therefore, the designation of plaintiff as an invitee or as a volunteer will determine the nature of the duty which defendant owed to plaintiff. In the case at bar, plaintiff admits defendant was not guilty of willful and wanton misconduct. Therefore, since plaintiff prevailed, the trial court had to find that plaintiff was an invitee.

Generally, an invitee is someone who enters the premises of another, either at the express or implied invitation of the latter, for a purpose

connected with the latter's business or for some purpose serving a mutually beneficial interest. (*Augsburger*, at 15; see *Sepesy*, at 58.) "To be upon premises by an implied invitation means that the person is there present for a purpose connected with the business in which the owner of the premises is engaged, or which he permits to be carried on." (*Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 347, 97 N.E.2d 290.) A volunteer is one who introduces himself into matters which do not concern him and who does or attempts to do something he is not bound to do. *George S. Mepham & Co. v. Industrial Com.* (1919), 289 Ill. 484, 489, 124 N.E. 540.

■■ A review of the record reveals that the trial court was correct in finding that plaintiff was an invitee. Plaintiff went to defendant's store to pick up merchandise he had ordered from defendant. Clearly plaintiff had an implied, if not an express, invitation to enter defendant's premises for a purpose connected with defendant's business. By purchasing and picking up the merchandise from defendant, plaintiff was serving both his and defendant's beneficial interests. Additionally, we agree with the trial court that plaintiff did not change his status from an invitee to a volunteer by attempting to lower the ramp himself.[1] See generally *Pauckner v. Wakem* (1907), 231 Ill. 276, 281, 83 N.E. 202 (holding that an invitation to go to a warehouse for merchandise must be held broad enough to extend to all space occupied by the merchandise, together with necessary passageways into and out of the warehouse).

Because plaintiff was defendant's invitee, defendant owed to plaintiff a duty of reasonable care. The issue properly before the jury, which found for plaintiff, was whether defendant exercised reasonable care toward plaintiff. All the evidence, viewed in a light most favorable to plaintiff, does not so overwhelmingly show that no verdict for plaintiff could ever stand. The trial court therefore acted properly in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

Defendant's other contention is that plaintiff should have been foreclosed from collecting any damages because he was contributorily negligent as a matter of law. In support of his position defendant cites plaintiff's thorough inspection of the ramp, the placing of his right foot over the indentation line in the pavement, and his attempting to lower the plate without the assistance of defendant's employee.

■■■ A party is guilty of contributory negligence if he fails to exercise ordinary care for his own safety and his negligence was the proximate

[1] In *Poulson v. Poulson* (1954), 1 Ill. App. 2d 201, 117 N.E.2d 310, the court held that while the general rule is that volunteers act at their own risk, an exception exists where the alleged volunteer has an interest in the work being done. In such a case even a volunteer is entitled to be protected from the carelessness of the servant of the master. 1 Ill. App. 2d 201, 205.

cause of his injury. (*Old Second National Bank v. Baumann* (1980), 86 Ill. App. 3d 547, 549, 408 N.E.2d 224.) The standard used in determining whether contributory negligence exists as a matter of law is the same standard used in determining whether a directed verdict or judgment notwithstanding the verdict was proper, that is, the *Pedrick* standard cited above. (See *Atchley v. Berlen* (1980), 87 Ill. App. 3d 61, 63, 408 N.E.2d 1177.) Reviewing the record in the light most favorable to plaintiff, we do not find evidence of contributory negligence so overwhelmingly favorable to defendant that no verdict for plaintiff could ever stand. Plaintiff, as an invitee, was entitled to assume that defendant's premises were reasonably safe. (See *Geraghty*, at 158.) The jury could reasonably have decided that plaintiff's actions were taken as a precaution to lessen any risk present in attempting to lower the ramp and that plaintiff was not negligent.

Defendant argues that plaintiff was contributorily negligent in not waiting for Huberty to lower the ramp. It is not, however, decisive that a safer course of action was available or that the actions taken entailed certain hazards. The issue is whether the choice of the less safe course was unreasonable. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 567, 396 N.E.2d 1197.) The trial court properly submitted the issue to the jury, and we find no reason to overturn the jury's verdict.

The judgment below is affirmed.

Affirmed.

HARTMAN, P. J., and PERLIN, J., concur.