2022 IL App (2d) 210534-U
No. 2-21-0534
Order filed October 24, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| BRENDAN McCABE, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-165 |
| | ) | |
| CROSSFIT TRI-CITIES, LLC, an Illinois | ) | |
| corporation, and BAMM SIGNS, INC. d/b/a | ) | |
| Signarama Aurora, an Illinois | ) | |
| corporation, | ) | Honorable |
| | ) | Susan Clancy Boles, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred in granting summary judgment on count I, as plaintiff properly alleged a duty under a theory of negligence; trial court did not err in granting summary judgment on count II (negligence); trial court erred in granting summary judgment as to count III (spoliation of evidence), as questions as to whether defendant's failure to preserve evidence was reasonable and prevented plaintiff from proving underlying negligence in count I were questions for the jury to decide if plaintiff failed to prove negligence allegations at trial.  Affirmed in part, reversed in part, and remanded.

¶ 2     Plaintiff, Brendan McCabe, appeals from the trial court's grant of summary judgment in favor of defendants, Crossfit Tri-Cities, LLC ("Crossfit") and Bamm Signs, Inc. ("Bamm"). We affirm in part, reverse in part, and remand.

¶ 3                                 I. BACKGROUND

¶ 4     In July 2017, Crossfit, a commercial cross-training gym, lost its lease on property in St. Charles, Illinois. Andrew Pollack, Crossfit's owner, assembled a volunteer crew of Crossfit staff and gym clients to move all of Crossfit's equipment to a new location. McCabe, who was a friend of Pollack, volunteered to help.

¶ 5     Crossfit also enlisted the help of Bamm, which was owned by Pollack's father, David. Bamm owned several types of ladders that it used in its business of installing signs for businesses. While Bamm did work at Crossfit's new location, Andrew requested some Bamm employees to leave one of Bamm's ladders at the old location to help with the move. McCabe, a self-employed laborer and carpenter, had previously done part-time work for Bamm, and was familiar with the ladders that Bamm used, including the 22-foot extension ladder that Bamm left at Crossfit's old facility.

¶ 6     The move occurred on September 30, 2017. After all the equipment, including 900 hard rubber tiles covering the floor of the facility, had been removed, a series of military banners, screwed to the wall at a height of approximately 16 to 18 feet, remained. McCabe and a friend, Carl Exter, were sent to the facility to remove them. McCabe ascended the extension ladder and removed three flags, using an electric drill and repositioning the ladder three times. After the third repositioning, when McCabe was working on removing the fourth flag, the ladder slipped backwards away from the wall. McCabe fell to the cement floor and shattered his heels. The injury required multiple surgeries.

¶ 7    McCabe filed suit against Crossfit and Bamm. His First Amended Complaint alleged negligence against Crossfit (count I) and Bamm (count II). Count III alleged spoliation of evidence against Bamm, based on Bamm's eventual disposal of the ladder. Both defendants filed motions for summary judgment, asserting: (1) lack of legal duty; (2) open and obvious danger; and (3) no proof of proximate causation. The trial court granted both motions, finding no question regarding legal duty or open and obvious danger remained. However, the court did find that a question of fact remained as to proximate causation. As to the spoliation count against Bamm, the trial court granted summary judgment "based on the lack of duty" in the negligence counts. Alternatively, the court found that Bamm had made the ladder available to McCabe for inspection and photographing and had been told that the investigation had been completed. Further, McCabe alleged only that his ability to prove his negligence case was "hindered," not prevented, by Bamm's failure to preserve the ladder.

¶ 8    McCabe filed motions to reconsider the grants of summary judgment. The trial court granted the motions as to its rulings regarding the doctrine of open and obvious danger; however, it denied the motions as to the lack of a duty owed by the defendants. This appeal followed.

¶ 9                                   II. ANALYSIS

¶ 10    McCabe first contends that the trial court erred in granting summary judgment in favor of both Crossfit and Bamm on the negligence counts. A grant of summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2010); *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 23. In determining whether a genuine issue of material fact exists, this court must construe all pleadings and attachments strictly against the movant and liberally in favor

of the nonmovant; that is, we must view all the pleadings and attachments in the light most favorable to the nonmovant. *Id.* A genuine issue of material fact exists where the material facts are in dispute or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. *Carney v. Union Pacific Railroad Co.*, 2016 IL 118984, ¶ 25. We review *de novo* a circuit court's grant of summary judgment. *Id.*

¶ 11 The essential elements of a cause of action based on common-law negligence are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury caused by that breach. *McLean v. Rockford Country Club*, 352 Ill. App. 3d 229, 232-33 (2004). A duty has been equated with "an obligation imposed by law which requires one to conform to a certain standard of conduct for the protection of another against an unreasonable risk." *Fancil v. Q. S. E. Foods, Inc.*, 60 Ill. 2d 552, 554 (1975). Factors relevant to determining whether a defendant owes a plaintiff a duty are the: (1) reasonable foreseeability of the injury; (2) reasonable likelihood of the injury; (3) extent of the burden of guarding against the injury; and (4) consequences of placing that burden on the defendant. *Buchaklian v. Lake County Family YMCA*, 314 Ill. App. 3d 195, 200 (2000). The existence of a duty in a particular case is a question of law; on the other hand, whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). As McCabe states in his brief, this appeal is concerned with the sole basis for the trial court's entry of summary judgment on the negligence counts: that neither defendant owed McCabe any cognizable duty of care.

¶ 12                                COUNT I

¶ 13 In count 1 of his amended complaint, McCabe alleged that he, "though not an employee of CROSSFIT, agreed to perform various duties for CROSSFIT in connection with" Crossfit's

planned move to a new facility. These duties were to be performed "at CROSSFIT'S request and direction, and for CROSSFIT'S benefit." Pollock and other Crossfit employees "coordinated, scheduled, managed and controlled all business relocation activities, details and tasks" related to the move, including scheduling and procuring equipment and tools, supervising and directing the manner and methods by which the work was to be performed, and sequencing of the moving activities, including the removal of the cushioned interlocking floor mats. Pollack "specifically directed and assigned" him to remove the banners and advised him that he would find a ladder at the location, procured by Crossfit, to be used to perform the work.

¶ 14    McCabe then asserted that Crossfit owed several duties, including duties to: (1) "exercise reasonable care in its management, control and execution of the moving project work such that it was performed in [a] reasonably safe manner by its staff, employees, volunteers and workers, including the Plaintiff;" and (2) "conduct, control and direct that the banner removal work assigned to Plaintiff be done in a reasonably safe manner, including that the work support provided to Plaintiff would be free of dangerous and/ or defective conditions, given the floor surface upon which it was to be used."

¶ 15    McCabe also alleged that section 414 of Restatement (Second) of Torts, which had been adopted by our supreme court, provided:

> "Negligence in exercising control retained by employer. One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

McCabe then listed a series of "careless and negligent acts or omissions" on the part of Crossfit, including: (1) failure to make a reasonable inspection of the ladder that was provided for his use; (2) provision of a defective, degraded and dangerous ladder that had "excessively worn end caps" on its feet; (3) negligently removing the interlocking rubberized floor surface at the gym prior to assigning him the banner removal work, causing him to have to set up the defective and excessively worn ladder on the bare unprotected concrete surface; (4) negligently scheduling the timing of the banner removal work such that the work would be performed while on the bare concrete floor instead of the rubber floor tiles; (5) failure to insure that the bare concrete floor surface was left in a reasonably safe and clean condition, free of any residue; and (6) was otherwise careless and negligent in its control, supervision, coordination and management 0f the work assigned to McCabe.

¶ 16　　We first note that we do not find that section 414 of the Restatement is applicable to this case. An independent contractor is someone who renders services for a principal but are only controlled as to the result of their work and not the means by which that result is accomplished. *Frieden v. Bott*, 2020 IL App (4th) 190232, ¶ 31. Status as an independent contractor implies aa employment relationship. See *Carney*, 2016 IL 118984, ¶¶ 31-32 ("An independent contractor is one who *renders service in the course of an occupation* representing the will of the person for whom the work is done only as to the result of the work and not as to the means by which it is accomplished\*\*\*." (internal quotation marks omitted) (emphasis added); "Because the *hiring entity* has no control over the details and methods of the independent contractor's work\*\*\*. (emphasis added).) Here, there is no dispute that McCabe had no employment relationship with Crossfit. As McCabe alleged, Pollack "chose to perform the move of the business solely through the *volunteered efforts* of CROSSFIT'S employees, customers and friends (collectively "workers"

hereafter) rather than hiring professional movers." (Emphasis added.) The fact that McCabe labels all of those who helped with the move "workers" is irrelevant. McCabe was not an independent contractor, and section 414 of the Restatement creates no duty here.

¶ 17    However, the owner or occupier of land owes to invitees present on that property the duty of exercising ordinary and reasonable care to see that the premises are reasonably safe. *Mock v. Sears, Roebuck and Co.*, 101 Ill. App. 3d 103, 105 (1981). An invitee is someone who "enters the premises of another, either at the express or implied invitation of the latter, for a purpose connected with the latter's business or for some purpose serving a mutually beneficial interest." *Id.* at 105-06. "An owner or occupier of land violates his duty to an invitee when he negligently allows conditions to exist on the property which imperil the safety of persons on that property." *Id.* at 105.

¶ 18    Clearly, McCabe was an invitee of Crossfit. Even Crossfit in its brief described the relationship with McCabe as "a situation where a friend is helping a friend relocate businesses," asserting that McCabe "was there on the [p]remises to remove the flags 'out of friendship.' " Thus, Crossfit had a duty to provide safe conditions on the property for McCabe, including the condition of the concrete floor after removal of the rubberized floor surface and the condition of the ladder that was provided to McCabe. As this duty existed, questions of breach of that duty and proximate cause of McCabe's injuries were still at issue, and summary judgment in favor of Crossfit was in error. Thus, we must reverse the trial court's grant of summary judgment on count I.

¶ 19                                    COUNT II

¶ 20    McCabe next contends that the trial court erred in granting summary judgment in favor of Bamm on count II. In count II, McCabe alleged that Crossfit "retained the services" of Bamm "by oral agreement" to, among other things, "provide ladders for Crossfit to use in performing some

of the moving project work." As part of that work, Bamm "brought its own work equipment and supplies to the Crossfit business locations," including the ladder that Crossfit "specifically requested" be left at its old facility. Crossfit "coordinated" McCabe's work, providing him with the ladder that was "owned, controlled and maintained" by Bamm. At the time that the ladder was provided to McCabe for his assigned work, it "was in a condition of dangerous disrepair including severely worn rubber 'end caps' or 'feet' covering the ends of the ladder side rails, such that the aluminum side rails were protruding through the worn rubber end caps." Ultimately, the ladder "suddenly and unexpectedly slid rapidly" out from under him McCabe, causing him to fall 16-18 feet onto the concrete floor.

¶ 21 According to McCabe, Bamm had the duty to "use reasonable care in its ownership, inspection, control and maintenance of the ladder in question so as to keep it from falling into a dangerous condition of disrepair." Bamm was "guilty of one or more of the following careless and negligent acts or omissions," including failure to: (1) properly inspect the condition of the ladder; (2) properly maintain the ladder in question in a reasonably safe condition for its foreseeable and intended uses; (3) repair the ladder when it was reasonably necessary to do so because of the excessive wear of its rubber end caps; and (4) provide notice or warning of the dangerous, defective and/or dilapidated condition of its ladder to intended, permitted or foreseeable users of the ladder.

¶ 22 McCabe argues that Bamm owed a duty of care pursuant to sec. 408 of the Restatement, which, according to McCabe, "precisely describes the factual scenario and common law duty arising therefrom in this matter. Section 408 provides:

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be endangered by its probable use, for

physical harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it." Restatement (Second) of Torts § 408 (1965).

¶ 23    We are curious as to McCabe's description of this section as "precisely" describing the factual situation here, as it is undisputed that Bamm did not *lease* the ladder in question. More factually applicable is section 405 of the Restatement, which provides:

> "One who directly or through a third person *gives or lends* a chattel for another to use, knowing or having reason to know that it is or is likely to be dangerous for the use for which it is given or lent, is subject to the same liability as a supplier of the chattel." Restatement (Second) of Torts § 405 (1965).

¶ 24    McCabe never attempts to explain why a section applying to leasing chattels is more applicable to this case than a section applying to lending chattels; McCabe gives exactly two sentences to the existence of section 405 of the Restatement, and those only to distinguish the duties arising under sections 405 and 408. He then immediately proceeds to commingle the wording of the sections, claiming that "Comment (a) to sec. 408 explains that when the chattel (item/equipment) is *lent* for immediate use" (emphasis added) when, in fact, comment (a) clearly refers to chattel "*leased* for immediate use" (emphasis added). See Restatement (Second) of Torts § 408, Comment (a) (1965).

¶ 25    Clearly, section 405 of the Restatement is the section applicable to the case before us. The duty of care under this section is "knowing or having reason to know that it is or is likely to be dangerous for the use for which it is given or lent." "Reason to know" is defined in the Restatement as denoting "the fact that the actor has information from which a person of reasonable intelligence

or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." Restatement (Second) of Torts §12(1) (1965). This duty "implies no duty of knowledge on the part of the actor." Restatement (Second) of Torts § 12, Comment (a) (1965). This is different from the expression "should know" (the duty contained in section 408) in that "should know" "implies that the actor owes another the duty of ascertaining the fact in question [*i.e.* a duty to inspect]." *Id.*

¶ 26 Here, there was no allegation or affidavit evidencing that Bamm had any knowledge or reason to know that the ladder was in any way dangerous for the use it was lent. Under section 405 of the restatement, Bamm had no duty to inspect under the restatement. Thus, McCabe has failed to establish that Bamm owed him a duty, and the trial court did not err in granting summary judgment in favor of Bamm on count II.

¶ 27                                     COUNT III

¶ 28 McCabe next contends that the trial court erred in granting summary judgment in favor of Bamm on count III of his first amended complaint alleging spoliation of evidence. Spoliation of evidence is not an independent tort; instead, such a claim can be stated under existing negligence principles. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335-36 (2004). Again, to state a negligence claim, a plaintiff must allege that the defendant owed him a duty, that the defendant breached that duty, and that the defendant's breach proximately caused the plaintiff damages. *Dardeen*, 213 Ill. 2d at 336. The duty element to spoliation claims was specifically tailored:

> " 'The general rule is that there is no duty to preserve evidence; however, a duty to preserve evidence may arise through an agreement, a contract, a statute [citation] or another special circumstance. Moreover, a defendant may voluntarily assume a duty by affirmative conduct. [Citation.] *In any of the foregoing instances*, a defendant owes a duty of due care

to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.' (Emphasis added.)" *Id*. quoting *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195 (1995).

Such a duty remains as long as the defendant should reasonably foresee that further evidence material to a potential civil action (for example, testing, microscopic examination, chemical analysis, etc.) could be derived from the physical evidence in the defendant's possession. *Andersen*, 341 Ill. App. 3d at 218.

¶ 29     We must first determine whether such a duty arises by agreement, contract, statute, special circumstance, or voluntary undertaking. *Dardeen*, 213 Ill. 2d at 336. If it does, we must then determine whether that duty extends to the evidence at issue—*i.e.*, whether a reasonable person should have foreseen that the evidence was material to a potential civil action. *Id*. If the plaintiff fails to satisfy either prong, there is no duty to preserve the evidence at issue. *Id*.

¶ 30     McCabe alleged that, on November 1, 2017, 30 days after his injury, he served Bamm with a "Notice to Preserve and Produce Evidence for Inspection." The notice stated in part:

"We hereby request that the ladder used by Mr. McCabe on 9-30-2017 **be preserved and held for our inspection** in the near future**. The ladder appears to be a Werner Telescoping Multi-Ladder.** The ladder in question is considered indispensable evidence in an investigation and potential claim arising out of injuries sustained by Mr. McCabe. Any alteration or modification will be considered an alteration or modification of key evidence. Any entity or person who fails to preserve this evidence as outlined above subjects themselves to potential liability for 'spoliation of evidence'.

Please continue to segregate the ladder in question so that it is not mistakenly used, altered, removed or discarded. Please contact the undersigned to arrange for a mutually

convenient time and place for us to inspect and photograph the ladder." (Emphases in original.)

Photos of the ladder were obtained later that month.

¶ 31 In March 2018, McCabe's counsel wrote to Bamm, informing it that they had completed their investigation of the incident and thanking them for their cooperation. Counsel informed Bamm that they believed that Bamm bore partial liability for McCabe's injuries because the ladder was in a "deteriorated, deficient and unsafe condition for its intended purpose at the time it was provided to Mr. McCabe." Counsel requested information regarding Bamm's liability insurance carrier.

¶ 32 In August 2019, McCabe scheduled a ladder and site inspection with an expert. Bamm produced a ladder, but the expert noted that it was a different ladder from the one at issue. Bamm admitted that, after counsel had photographed and inspected the ladder, "the ladder was placed back in service and its present location is not certain."

¶ 33 We first note that, based on our conclusion that summary judgment on count I was erroneously granted, the trial court's initial basis for its grant of summary judgment on this count—that, "based on the lack of duty" in the negligence counts, the spoliation count must fail—is no longer apt. We [then] now conclude that a genuine issue of material fact existed such that summary judgment on the spoliation count was granted in error. Clearly, a duty to preserve evidence arose through an agreement. See *Darden*, 213 Ill. 2d at 335-36. McCabe requested that the ladder be preserved and held for inspection in the near future. Bamm cooperated with that request and preserved the ladder until photos of the ladder were taken. McCabe later thanked Bamm for its cooperation but also notified Bamm that they believed that Bamm bore partial liability for McCabe's injuries and also requested information regarding Bamm's liability

insurance carrier. The question remains whether, in light of this communication from McCabe, Bamm should have foreseen that the ladder remained material to a potential civil action such that it should have further segregated and preserved it.

¶ 34    McCabe alleged that, if the ladder had been preserved and maintained for use as evidence, "it would have provided direct evidence of the degree of wear of the ladder's end caps and the degree to which the aluminum side rails were protruding through the end caps to make direct contact with the cement surface of the warehouse floor." It would also have been available for his expert to test "the coefficient of friction actually created between the feet 0f the actual ladder at issue and the cement floor." If McCabe fails to prove his claim of negligence against Crossfit, the jury must decide whether Bamm's failure to preserve the ladder was reasonable and, if not, whether that failure prevented McCabe from proving his negligence claim. These questions of material fact clearly make the trial court's grant of summary judgment on this count [erroneous] is problematic. Therefore, we must reverse the grant of summary judgment on this count.

¶ 35                                III. CONCLUSION

¶ 36    For these reasons, the judgment of the circuit court is affirmed as to count II and reversed and remanded as to counts I and III.

¶ 37    Affirmed in part, reversed in part, and remanded for further proceedings.