ROSS, Respondent, v. INDEPENDENT SCHOOL DISTRICT NO. 1 OF MADISON, et al., Appellants.

(207 N. W. 446.)

(File No. 5576.   Opinion filed February 24, 1926.)

1.  **Master and Servant—Compensable Injury—Injury to School Janitor, Voluntarily Assisting Independent Contractor Erecting Flagpole, Held Not Compensable as "Arising Out of and in Course of Employment."**

    Where board of education hired an independent contractor to put a flagpole on the school grounds, an injury to the assistant janitor of the school building sustained while he was voluntarily helping contractor to locate the flagpole in the excavation, was not an injury "arising out of and in the course of his employment" within Rev. Code 1919, Secs. 9437-9440.

2.  **Master and Servant—Workmen's Compensation Law—Findings— Finding of Compensable Injury Conclusion of Law, Where Facts Are Undisputed.**

    Finding that decedent received injury arising out of and in course of employment, within Workmen's Compensation Act, is conclusion of law and not a finding of fact, where facts are undisputed.

Appeal from Circuit Court, Lake County; Hon. L. L. FLEE-GER, Judge.

Proceeding for compensation under the Workmen's Compensation Act by Lillian Ross, claimant, for the death of her husband, opposed by the Independent School District No. 1 of Madison, as employer, and the Western Surety Company, a corporation, as insurance carrier. From a judgment of the circuit court approving the award of the Industrial Commissioner, and from an order

denying a new trial, employer and insurance carrier appeal. Reversed and remanded, with directions.

*Kirby, Kirby & Kirby,* of Sioux Falls, for Appellant.

*Ira F. Blewitt,* of Madison, for Respondent.

(1) To point one of the opinion, Appellant cited: Morris & Co. v. Indutsrial Commissioner (Ill.); 128 N. E. 727; Dietzen v. Industrial Board of Illinois (Ill.), 116 N. E. 684; Wilson v. Dakota Light & Power Co. (S. D.), 186 N. W. 828.

CAMPBELL, J. Petitioner, Lillian Ross, sought compensation under the Workmen's Compensation Law for fatal injury to her husband. The Board of Arbitration found in her favor, and allowed compensation in the amount of $3,000, which action was subsequently reviewed and approved by the Industrial Commissioner, from whose decision and award defendants appealed to the circuit court of Lake county, where findings, conclusions, and judgment were again in favor of petitioner, and, from the judgment of the circuit court and order denying motion for a new trial, defendants now appeal to this court.

The sole question for determination upon this appeal is whether or not the injury whereof plaintiff's husband died was an injury "arising out of and in the course of employment." The learned circuit judge and the Deputy Industrial Commissioner have so found. This court has gone a great way in holding that the findings of the Board of Arbitration and of the Industrial Commissioner upon review will not be here reviewed, if there was any substantial, credible evidence to support the same. Wakefield v. Warren Lamb Lumber Co., 194 N. W. 835, 46 S. D. 510; Dependents of Shaw v. Harms Piano Co., 184 N. W. 203, 44 S. D. 346; Vodopich v. Trojan Mining Co., 180 N. W. 965, 43 S. D. 540; Day v| Sioux Falls Fruit Co., 177 N. W. 816, 43 S. D 65. In the instant case, however, there is no dispute whatsoever upon the facts. It is not a question of whether there was substantial, credible evidence to sustain a finding on controverted facts. The question before us is whether ,upon the admitted and entirely undisputed facts, it can be said as a matter of law, or as a mixed matter of law and fact, that the injury was one "arising out of and in the course of employment" within the meaning of our statute as set out in sections 9437-9440, Rev. Code 1919.

The proved and stipulated facts show substantially as follows: The deceased, Ross, was employed by appellant school district as assistant janitor in the Madison high school. He was under the direction and control of one Owens, who was the principal or head janitor and both of them, to some extent, at least, were under the control, direction, and supervision of one Nickle, who was superintendent of the high school. Some time prior to May 22, 1922, a 75-foot iron flagpole had been purchased for the high school grounds, being paid for by funds raised by students and pupils. The board of education knew and consented to the scheme, and had designated a place on the school grounds for the erection of the flagpole. A few days previous to the erection of the pole, and while the pole was upon the school grounds, it had been painted by the superintendent, Nickle, or under his instructions. The board had no facilities or equipment for erecting the pole, and the superintendent, Nickle, at the direction and by the authority of the board of education, had entered into a contract with one Robertson, a carpenter and general contractor at Madison, whereby Robertson was to attend to the erection of the flagpole. Robertson had nothing to do with the painting of the pole, which had previously been done by Nickle, but had entire charge of the matter of placing and putting up the pole. In this regard Mr. Nickle says:

"I had entered into a contract with Mr. Robertson to erect the pole at the suggestion of the members of the board of education. We had no facilities at that time whereby we could erect it. We had no contract or agreement with Mr. Robertson to in any manner assist him in placing the pole; he and his men were to do that."

On May 22d Robertson sent a crew, consisting of a foreman and three or four men, to place the flagpole; Robertson's foreman being in charge of the work. In order to raise the pole successfully without interfering with some overhead wires, it was necessary to turn the pole end for end, in its location upon the ground, before starting to raise it, and in the course of moving the pole some of the paint was marred and the superintendent, desiring to repaint or retouch the marred spots before the pole was erected, come out with paint and brush, and, by his direction, Owens, the head janitor, was assisting in holding up the pole, so

that the marred places might be reached and Owens, feeling that additional help was needed for that purpose, went to the school building where Ross, the deceased, was, and directed him to come out and help hold the pole so that the superintendent could paint the marred spots. It is entirely clear upon the evidence that Ross was called only to assist in holding the pole up for painting and keeping it off the ground, and not to assist in the erection of the pole. The head janitor, Owens, in this connection, says that Ross was sweeping in the building when he called him, and that the reason he asked him to come out was that Mr. Nickle told him to call him, that Mr. Nickle was painting the pole and it had to be lifted up, and he further testified:

"Q. Did you ask him to help in the erection of the pole? A. No; not in the erection of the pole, only to keep it off the ground."

Mr. Nickle said:

"I did not call any of our employees, including Mr. Ross, for the purpose of assisting in raising the pole. It was necessary for Mr. Ross to be there in order that the paint on the pole might not be marred, and in order to get the paint on the pole."

These matters—that is, the turning of the pole end for end, and the repainting of the marred spots—appear to have been accomplished within 15 or 20 minutes after Ross came out of the building. Robertson's crew had their tackle attached to the pole and the pole was swinging up, at one end, at least 10 feet. Nickle and Owens and Ross stood there, Nickle still holding the painting utensils. Everything that Ross had been called for and had been directed to do had been completed. Thereupon, without instruction or directions from any one, and without any statement to any one, Ross started forward toward the hole in which the flagpole was to be placed, with the apparent intention of assisting Robertson's crew to secure the base of the pole in the hole, whereupon he was struck upon the head by the falling of a timber being used by Robertson's crew in the erection of the pole, which injury resulted in fractured vertebræ whereof he presently died. The head janitor says that he does not know exactly what Ross was doing at the time he received his injury. Nickle, the superintendent, testifies:

"Q. At the time of this accident whereby Mr. Ross was injured, was he not then pushing with a plank of some kind and

assisting in raising the pole? A. I don't remember exactly. Other men were pushing there, and Mr. Ross was going to assist them in pushing.

"Q. He was there with the other men at the time? A. Yes, sir.

"Q. And these men that Mr. Ross was assisting, were these laborers and men employed by Mr. Robertson? A. Yes, sir.

"Q. And at the time he was injured he was not assisting relative to the painting of the pole, for the time he was going to aid these other men in getting the pole in place? A. Yes, sir."

He further testified:

"At the time Ross was injured, that was after he had been holding up the pole for me to paint. He had ceased that labor; he was assisting these employees of Mr. Robertson's. At the time Mr. Ross was aiding these employees of Mr. Robertson's, the pole was swinging up and at the one end it must have been 10 feet where the ropes were attached. What he was doing at that time was aiding the employees of Mr. Robertson in getting the bottom of the pole into the hole. I had ceased painting at that time, and Mr. Ross was not holding the pole up for that purpose. I believe I still held the painting utensils. I had not directed him to hold up the pole at the time he was injured."

[1] That this was an unfortunate and regrettable accident is beyond question, and that the benefit which would accrue to the dependents of the decedent by receiving $3,000 compensation would, as an individual matter, greatly outweigh the hardship to appellant by reason of having to pay out that amount, may well be admitted, but we are not at liberty to decide this case upon any such basis. The action of decedent was prompted by a perfectly normal and natural impulse to render assistance where assistance appeared to be needed. But at that time all the work which decedent had been directed to do, and for which he had been called from the building, was entirely accomplished. The raising of the flagpole and locating it securely in the excavation prepared was a matter with which the board of education and its employes had no concern. It had been given over entirely to the independent contractor Robertson. We are compelled to the conclusion that the injury suffered by decedent did not arise out of and in the course of employment, and that at the time the injury was received the

decendent was not acting in the course of his employment, but solely as a volunteer, going to the assistance of the independent contractor, and that such action, on his part, was not connected with or incident to the performance of his duties, and we think this case falls within, and must be ruled by, the doctrine of Wilson v. Dak. Light & Power Co., 186 N. W. 828, 45 S. D. 175. See, also, Mepham & Co. v. Industrial Commission, 124 N. E. 540, 289 Ill. 484.

[2] The findings of the court recite that the decedent rereived the injury in question, arising out of and in the course of his employment, which is not a finding of fact at all, but a conclusion of law, and in our opinion, in this case, an erroneous conclusion of law. The facts found by the court, which are properly findings of fact, and not conclusions of law, will support only one judgment, a judgment of nonliability.

The order and judgment appealed from are therefore reversed, and the cause remanded, with directions to enter a judgment in favor of appellants and against respondent, reversing the order and award of the Industrial Commissioner, and dismissing respondent's petition with prejudice.

Note.—Reported in 207 N. W. 446. See, Headnote (1), American Key-Numbered Digest, Master and servant, Key-No. 375(1), Workmen's Compensation Acts, C. J. Sec. 63; (2) Master and Servant, Key-No. 417(6), Workmen's Compensation Acts, C. J. Sec. 128.