Rita E. FULLMER, Plaintiff
and Appellee,

v.

STATE FARM INSURANCE COMPANY,
Mona Drolc, and Joyce Hamond,
Defendants and Appellants.

Nos. 17740, 17743.

Supreme Court of South Dakota.

Argued Aug. 31, 1992.

Decided March 31, 1993.

**358**

Rexford A. Hagg of Whiting, Hagg and Hagg, Gary D. Jensen of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

Curt Ireland, Rapid City, for defendants and appellants State Farm Ins. Co. and Joyce Hamond.

Ronald R. Kappelman, Rapid City, for defendant and appellant Mona Drolc.

MILLER, Chief Justice.

This action arose out of an automobile collision between defendant Joyce Hamond and plaintiff Rita Fullmer causing property damage and personal injuries to Fullmer. Fullmer later went to the office of Hamond's insurance company's claims agent, Mona Drolc, where Drolc apparently grabbed Fullmer's arm and raised it over her head. Fullmer alleged this aggravated her prior injuries. Bifurcated trials were held; the first was on the "automobile collision" claim against Hamond. The jury found Hamond was negligent and awarded Fullmer damages. Later, on the "battery claim" against Drolc and State Farm, the second jury found Drolc had committed a battery but found Drolc's actions caused no damages to Fullmer. At the conclusion of the battery trial, Fullmer moved to set aside the judgment on the automobile collision claim, which State Farm had already satisfied, and also moved for a new trial on the battery claim. The trial judge, concluding justice had not been done and that Fullmer had been "whipsawed" by inconsistent defense positions in the two separate trials, granted the motions. Defendants appeal. We affirm in part and reverse in part.

## FACTS

On February 14, 1989, the car which Fullmer was driving was rear-ended by a car driven by Hamond. Hamond was covered by an insurance policy of the State Farm Insurance Company. Fullmer complained of pain in her head and pain down her back which originated in her neck. She went to Rapid City Regional Hospital's emergency room where she was examined and diagnosed by the supervising physician as having a "neck injury."

Fullmer went back to work the next day as a full-time housecleaner. When her discomfort continued, she made an appoint-

ment to see her family physician who referred her to a physical therapist. At her first therapy session, March 6, the therapist noted various problems, including Fullmer's complaints of pain in her arms and weakness in her hands. She went in for therapy every three or four days and on March 17, the therapist noticed abnormal sensations and color changes in Fullmer's hands. By March 20, the therapist noticed color changes in both of her hands as well as in her arms where she also had some numbness and swelling.

Fullmer then went to Hamond's State Farm office to meet with claims representative Drolc. During the course of this meeting Fullmer extended her left hand to show Drolc the color changes. Fullmer asserted, and a jury later found, that Drolc then reached out, without warning or consent, took hold of Fullmer's left arm and raised it in the air. Fullmer claims that as a result of Drolc's action, she suffered a new injury to her left arm and shoulder, since shortly after the incident she developed a "terrible burning" pain. Her family physician referred her to Dr. Boyer, an orthopedic surgeon, and then to Dr. Finley, a neurologist. Dr. Finley concluded that Fullmer's underlying problems had been aggravated as a result of the arm-raising incident and had led to reflex sympathetic dystrophy (RSD) in her left upper extremity. Fullmer's physical therapies continued, focusing on her shoulders and arms, though they failed to give her relief. Eventually, Dr. Finley ordered her to quit working.

Fullmer brought her automobile collision and battery claims in the same complaint. State Farm's motion to bifurcate the two claims was granted. The automobile collision claim was tried first. Two weeks prior to trial, Dr. Boyer's deposition was taken. He stated there that if Fullmer had RSD, he agreed with Dr. Finley's opinion that her RSD was *not* caused by the car accident. Fullmer's damage claims at this first trial were limited to: (1) property damage of approximately $500; (2) lost wages of $22 and medicals of approximately $2500; and (3) damages for her "sprained neck" and associated headaches. *No claim was made for the RSD as all parties agreed the RSD claim would be left to the battery trial.* The medical testimony of Dr. Finley helped establish causation for Fullmer's " 'sprained neck' and associated headaches." The jury was informed of the "arm-raising" event though the parties and the court emphasized that no claim was being made for injuries arising from that event. *State Farm, providing Hamond's defense, argued that although Fullmer probably did have serious injuries, they were caused by the subsequent arm-raising event.* The defense at this first trial did not call Dr. Boyer or any other medical witnesses. The jury found Hamond was negligent, returned a damage verdict of $4,504.88 and awarded Fullmer $1,760.75 for costs. Judgment was entered; State Farm later satisfied the judgment.

The battery trial[1] began July 23, 1991. Dr. Finley testified that Fullmer's RSD is permanently painful and disabling and was caused when Drolc grabbed Fullmer's arm and raised it over her head. In its defense at this second trial, *State Farm now argued that Fullmer's RSD was caused by the automobile collision.* In support of this position, State Farm called an expert medical witness—Dr. Boyer. Dr. Boyer testified, *contrary to his discovery deposition testimony,* that he believed Fullmer did have RSD and that it was most likely caused by the car accident.[2] Fullmer had

1. The parties also refer to this trial as the "assault" trial and the "arm-raising" trial.

2. Defendant Drolc waived cross-examination of Dr. Boyer. Drolc's counsel in the battery trial agreed with, and argued to the jury, the same type of arguments that State Farm offered, as could be expected since she had much to gain by Dr. Boyer's changed testimony. We note that State Farm, in addition to providing insurance coverage to Hamond, is also paying for Drolc's lawyer. The same counsel has been shared by Hamond, in the first trial, State Farm, in the second trial, and by both of them on appeal. Further, this same counsel was shared with Drolc until just six weeks before her battery trial. Drolc's new counsel, as with the shared counsel, was hired and paid for by State Farm.

not been aware prior to the battery trial that Dr. Boyer's testimony would reflect a changed opinion. The jury specifically found Drolc assaulted Fullmer, but went on to find that Drolc's "battery" caused no damages to Fullmer.

Following the jury's decision, the trial court granted Fullmer's motions to set aside the automobile collision judgment and to grant a new battery trial. The trial court found numerous grounds to support a conclusion that it had made a mistake when it bifurcated the two trials. This conclusion was supported at least in part by the trial court's conclusion that Fullmer had been "whipsawed" by inconsistent positions taken by the defense: Their assertion during the first trial that Fullmer's RSD *was not caused* by the car accident and their assertion at the second trial that Fullmer's RSD *was caused* by the car accident. Defendants appeal, raising many issues. We do not find it necessary to address all of them.

## ISSUE I

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING ASIDE THE AUTOMOBILE COLLISION JUDGMENT OR IN GRANTING A NEW ARM–RAISING TRIAL.

■ Bifurcation is appropriate "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]" SDCL 15–6–42(b). The trial court has discretion under proper circumstances to order separate trials of issues or claims raised in a case. *Christiansen v. Strand*, 81 S.D. 187, 194, 132 N.W.2d 386, 389 (1965).

■ Nevertheless, the purpose of bifurcation is "to 'avoid prejudice,' not to create it." *United States Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181 (3rd Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2038,

72 L.Ed.2d 485 (1982). In response to Fullmer's motions at the end of the second trial to set aside the automobile collision judgment and to grant a new arm-raising trial, the court concluded Fullmer had been prejudiced by the bifurcation and that there had been a "serious miscarriage of justice." According to the changed testimony of Dr. Boyer, Fullmer's RSD was caused by the car accident or, according to the consistent testimony of Dr. Finley, Fullmer's RSD was caused by the arm-raising incident. The court noted that although the parties' experts agree that Fullmer suffers RSD, she has not been compensated for this injury. The trial court stated this was due to defendants' inconsistent positions at the trials: "In other words, the bifurcation Order allowed Plaintiff to be whipsawed on the issue[s] of medical causation and damages." The trial court found its bifurcation order had been a mistake and was improper. Fullmer's motions were granted. Defendants assert the trial court erred when it granted these motions.

## A. *SETTING ASIDE THE AUTOMOBILE COLLISION JUDGMENT*

■ Motions to vacate judgment under SDCL 15–6–60 are in the sound discretion of the trial court and will not be overturned unless the record affirmatively shows that there has been an abuse of discretion.[3] *Haggar v. Olfert*, 387 N.W.2d 45, 51 (S.D. 1986). The trial court may grant relief from final judgment based on mistake, surprise, newly discovered evidence and for any other reason which justifies relief. SDCL 15–6–60(b)(1), (2) & (6). Although the trial court based its decision on each of these grounds, "newly discovered evidence" provides a sufficient basis upon which to affirm the trial court.

■ To be granted relief from judgment on a claim of newly discovered evidence,

---

**3.** During oral argument before this court, there was some discussion regarding the effect on the court's discretion to grant Fullmer, the prevailing party, relief from judgment in light of the fact that State Farm had already satisfied the judgment against Hamond. We express no opinion on this question as it does not appear from the record that the trial court was presented with this question, nor has the question been briefed to this court. Accordingly, this issue is not properly before us on appeal. *Weaver v. Boortz*, 301 N.W.2d 673, 673 (S.D.1981); *Jennings v. Hodges*, 80 S.D. 582, 591, 129 N.W.2d 59, 64 (1964).

Fullmer, the moving party, must establish that

(1) The evidence was discovered after trial;

(2) [Fullmer] exercised due diligence to obtain the evidence for trial;

(3) The evidence is not merely cumulative or impeaching;

(4) The evidence is material; and

(5) The evidence is such that a new trial would probably produce a new verdict.

*Haggar*, 387 N.W.2d at 51. Applying the facts to each part of the test, we determine the trial court did not abuse its discretion.

■ (1) It is beyond dispute that Dr. Boyer changed his opinion after the automobile collision trial. (2) Dr. Boyer's discovery deposition was taken just two weeks before the automobile collision trial. Dr. Boyer admitted during cross-examination in the arm-raising trial that his opinion on Fullmer's RSD did not change until after he had given his deposition and after the automobile collision trial. Fullmer was diligent in obtaining Dr. Boyer's evidence for the automobile collision trial. (3) Dr. Boyer's opinion testimony, as given in the second trial, was unique on the issue of causation of Fullmer's RSD.[4] (4) Dr. Boyer's changed testimony is obviously material, as the cause of Fullmer's RSD was the main damage issue in the battery trial and was expressly omitted by the parties from the automobile collision trial. (5) Lastly, had Dr. Boyer, the defense's expert, testified that the automobile collision caused Fullmer's RSD, there probably would have been a different verdict at the automobile collision trial, even though Fullmer's expert may have testified the arm-raising was the cause. The opinion testimony of Dr. Boyer does, therefore, constitute newly discovered evidence. We are not left with a conviction that the trial court abused its discretion when it granted Fullmer's motion to set aside the automobile collision judgment.

**4.** No physician other than Dr. Boyer testified in either trial that it was the automobile collision which caused Fullmer's RSD, though non-physicians did put forth various other possible causes of Fullmer's RSD during the arm-raising trial.

**5.** SDCL 15–6–26(e) reads in part:

### B. *THE NEW BATTERY TRIAL*

■ Motions to grant a new trial under SDCL 15–6–59 are "addressed to the sound discretion of the trial court and ... will not be disturbed unless it appears affirmatively from the record that there has been an abuse of such discretion." *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 153 (S.D.1986); *Haggar*, 387 N.W.2d at 51. "We have said that a clearer showing of an abuse of discretion is required when a new trial has been granted than where a new trial has been denied." *J.H. Larson Elec. Co. v. Vander Vorste*, 81 S.D. 296, 303, 134 N.W.2d 500, 504 (1965).

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: (1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; ... (3) ... surprise which ordinary prudence could not have guarded against; ... (5) ... inadequate damages appearing to have been given under the influence of passion or prejudice[.]

SDCL 15–6–59(a)(1), (3) & (5). The trial court based its decision to grant Fullmer's motion for a new battery trial on each of these grounds. "Surprise" provides a sufficient basis upon which to affirm the trial court.

■ Dr. Boyer's discovery deposition was taken just two weeks before the first trial. As previously discussed, Dr. Boyer's testimony at the battery trial had changed substantially from the testimony he gave in his deposition. Although this change was in part due to the results of some medical tests done on Fullmer after the automobile collision case was tried, no defendant supplemented Fullmer's interrogatories as required. SDCL 15–6–26(e).[5] The burden to

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

update testimony lies with the party who "knows that the response though correct when made is no longer true[.]" SDCL 15–6–26(e)(2). Defendants have not been diligent in informing Fullmer of their expert's change of opinion. The trial court did not abuse its discretion in granting a new trial based on the surprise testimony of Dr. Boyer.

We note that as a result of the bifurcation order and the inconsistent positions taken by defense counsel at the two trials, no jury has had the opportunity to make the particularized determination of whether Fullmer's RSD was caused by (1) the car accident, (2) the arm-raising or, (3) some other cause. The jury in the first trial had no opportunity to determine causation of Fullmer's RSD. The jury at the second trial was only given the opportunity to choose between (2) the arm-raising or (3) some other cause when determining causation. As a result of the trial court's initial bifurcation order, Fullmer has been done an injustice by the juries' verdicts which can only be corrected by a new trial. *Hepper v. Triple U Enters.*, 388 N.W.2d 525, 530 (S.D.1986). As the trial court did not abuse its discretion when it set aside the automobile collision judgment or when it granted a new battery trial, we now look at the scope and conduct of this new trial.

### ISSUE II

**WHETHER THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL LIMITED TO MEDICAL CAUSATION AND DAMAGES AND IN DENYING COSTS TO THE PARTIES FOR THE FIRST ARM–RAISING TRIAL.**

Defendants assert the trial court erred when it limited the scope of the new trial. In ordering the new trial, the trial court:

> (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Ordered that Plaintiff's Motion for New Trial in the arm raising (battery trial) as to medical causation, damages and punitive damages be, and the same hereby is, granted and

It is further Ordered that the car accident case against Defendant Hamond and arm raising (battery) case against Defendant State Farm Insurance and Mona Drolc shall hereafter be tried together, with the only issues being the medical causation of Plaintiff's reflex sympathetic dystrophy and resulting damages plus whatever punitive damages, if any, should be awarded against Defendant State Farm Insurance and Defendant Drolc; and

It is further Ordered that neither Plaintiff nor Defendants State Farm Insurance or Mona Drolc shall be awarded any cost for the arm-raising or battery trial.

During the course of the battery trial Fullmer made a motion for summary judgment or, in the alternative, a directed verdict on the issue of whether Drolc was acting within her scope of employment. The motions were not granted as the trial court said it was leaving the determination of this issue to the jury. However, because the jury found Fullmer had not been damaged by Drolc's actions, the jury never reached the scope of employment issue. Defendants assert that as a result of the court's order, the trial judge in effect determined Drolc was acting within the course and scope of her employment and that such a determination is erroneous.

Fullmer asserts that the trial court acted correctly as the court has the authority to re-visit her motion for a directed verdict on the issue of scope of employment after the jury submitted its verdict: "Whenever a motion for a directed verdict made at the close of all the evidence is denied or for

> (2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which ... (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." SDCL 15–6–50(b). Fullmer argues that by excluding the scope of employment issue in the new battery trial, the trial judge merely made "a later determination of the legal questions raised by the motion." *Id.*

Generally, it is a question of fact for the jury to determine whether an employee's actions are within the scope of their employment. *Deuchar v. Foland Ranch, Inc.,* 410 N.W.2d 177, 181 (S.D. 1987); *Lovejoy v. Campbell,* 16 S.D. 231, 237, 92 N.W. 24, 26 (1902). However, this determination may be made as a matter of law where an employee's "deviation is slight and not unusual [or] ... is very marked and unusual." *Id. See Ross v. Independent Sch. Dist. No. 1 of Madison,* 49 S.D. 491, 207 N.W. 446 (1926). The case before us appears to fall between those extremes and should be submitted to the jury under proper instructions. *Lovejoy,* 16 S.D. at 238, 92 N.W. at 26. The trial court erred in its limitation of the scope of the new trial. We therefore reverse and direct that the issue of whether Drolc was acting within the course and scope of her employment be included in the new battery trial.

State Farm and Drolc assert the issue of punitive damages was erroneously submitted to the jury over their motions to dismiss. Defendants assert there was no showing of "malice" by Drolc. State Farm also argues that under the "complicity rule," there is no evidence to warrant instructing the jury on punitive damages against them.

The "complicity rule" was set out in *Dahl v. Sittner,* 474 N.W.2d 897 (S.D. 1991), which was decided after the comple-

tion of the battery trial. This rule "requires an element of knowledge on behalf of the principal before imposing liability [on the employer.]" [6] *Id.* at 903. Fullmer's strategy at the battery trial was to show Drolc was frustrated with Fullmer and under pressure from State Farm to settle her claim quickly by "making things happen." It appears from the record that there is a sufficient basis from which the jury could find "malice" by Drolc and support submitting the punitive damages claim against State Farm to the jury. The trial court did not err when it included the issue of punitive damages in the new trial.

State Farm and Drolc, though not Fullmer, also assert the trial court erred when it denied all parties an award of costs in the first battery trial. The award of costs in civil actions is discretionary with the court unless otherwise stated by law. SDCL 15–17–1 & 16. We are not persuaded the trial court abused its discretion.

In sum, the trial court did not abuse its discretion when it granted Fullmer's motion to set aside the automobile collision judgment, nor when it granted Fullmer's motion for a new trial, nor when it denied costs to the parties. The new trial is to include the issue of whether Drolc was acting within the scope of her employment and otherwise as outlined in the trial court's order.[7]

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.

---

6. The trial court's instruction to the jury on assessing punitive damages against an employer were taken from *Olson v. Tri–County State Bank,* 456 N.W.2d 132 (S.D.1990), which was then our recent decision on this subject.

7. Defendants allege numerous errors in the trial court's conduct of the battery trial. As there is to be a new trial, it is not necessary for this court to resolve the alleged errors. We observe, however, that the alleged errors are less likely to recur if the trial judge does not inject his personal frustrations and biases into the proceedings. It is not, as the trial court stated, Drolc's "tough luck" that she was not a part of the automobile collision trial. Nor were the trial court's comments that State Farm has "an $18 billion deep pocket in this case," or that Drolc "is a relatively poor person," relevant to

any issues before the trial court. Further, it is incumbent on the trial judge to listen to counsel's objections and the reasons therefore. It is not appropriate judicial conduct to walk out on counsel while he is proffering reasons for his objections and making offers of proof. Judicial frustrations and biases do not belong in this or any other courtroom. South Dakota Code of Judicial Conduct Canon 3 (1974).