· Rita E. FULLMER, Plaintiff
and Appellee,

v.

STATE FARM INSURANCE COMPANY,
Petitioner and Appellant,

and

Mona Drolc and Joyce Hamond
(Beuning), Defendants and
Appellees.

No. 18404.

Supreme Court of South Dakota.

Argued Jan. 10, 1994.

Decided April 6, 1994.

Rexford A. Hagg of Whiting, Hagg and Hagg, and Gary D. Jensen of Lynn, Jackson, Shultz and Lebrun, Rapid City, for plaintiff and appellee Fullmer.

Curt Ireland and Suzanne M. Feist, Rapid City, for petitioner and appellant State Farm Ins. Co.

Ronald R. Kappelman, Rapid City, for defendant and appellee Drolc.

Jean M. Cline of Bettmann, Feehan and Cline, Rapid City, for defendant and appellee Hamond.

WUEST, Justice.

Appellant State Farm Insurance Company (State Farm) brings this intermediate appeal, raising two issues. First, State Farm asks that we reverse the circuit court's denial of attorney Curt Ireland's (Ireland) motion to withdraw as counsel for defendant Joyce Hamond Beuning (Beuning). Second, State Farm asks that we remove Judge Grosshans as trial judge. We reverse the trial court on the first issue, but deny the request to remove Judge Grosshans.

### FACTS

The basic facts underlying this action are thoroughly recounted in our opinion on an earlier appeal in this matter. See Fullmer v. State Farm Ins. Co., 498 N.W.2d 357 (S.D. 1993) (hereinafter Fullmer I). In Fullmer I, we affirmed the trial court's decision granting new trials when it concluded that it had made a mistake when it granted State Farm's motion to bifurcate the two trials, allowing one trial (held in April 1991) for the "automobile collision" action, and a second trial (held in July 1991) for the "arm raising" or "battery" action (hereinafter "battery" action or trial). Fullmer I, 498 N.W.2d at 360–62.

The record shows that in the original action, Ireland filed an answer to the complaint on behalf of all three defendants: (1) State Farm; (2) the State Farm claims representative Mona Drolc (Drolc) who allegedly raised the arm of the plaintiff Rita Fullmer (Fullmer); and (3) the individual whose vehicle allegedly collided with the rear end of Fullmer's vehicle, Beuning. This tripartite representation continued until February 1991, when attorney Ron Kappelman (Kappelman) made his first appearance on behalf of Drolc. Apparently, Drolc requested, and State Farm agreed to supply and pay for separate counsel, as well as pay any judgment entered against Drolc. Ireland continued to defend both Beuning and State Farm. However, at the battery trial in July 1991, Ireland elicited testimony from a witness engaged by State Farm (Dr. Boyer) that was adverse to the position of State Farm's insured, Beuning. See Fullmer I, 498 N.W.2d at 359–60 (noting that State Farm argued in the second trial that Fullmer's injuries were caused by the automobile collision). Thus, shortly after our decision in Fullmer I was announced, Ireland filed a motion to withdraw as attorney for defendant Beuning (dated Apr. 8, 1993), citing a "potential conflict of interest" in the positions of State Farm and Beuning. Prior to any hearing on the motion, State Farm hired attorney Jean Cline (Cline) as separate counsel for Beuning. Cline made her first appearance of record on May 5, 1993. Following a hearing, Ireland's motion to withdraw was denied. The record shows that Beuning consented to Ireland's withdrawal as her counsel of record. Plaintiff Fullmer consented to the withdrawal only if several conditions were met: (1) No undue delay; and (2) that the jury, in the retrial, be informed of the facts detailing the case history of representations and admissions.[1]

The court listed twelve reasons for denial of Ireland's motion to withdraw, which can be consolidated into several points: (1) State Farm could adequately protect Beuning's interests by the court's allowing Cline to remain "in the background during the balance of the case" as counsel for Beuning; (2) State

---

1. Specifically, Fullmer provided the court with a First Retrial Memorandum, proposing and setting out therein the following facts to be read to the jury:

    (1) Joyce Hamond Beuning was insured by State Farm for the injuries and damages caused by the accident of February 14, 1989. (2) State Farm Insurance hired Mr. Ireland to represent Ms. Beuning during the first trial, and paid for his services. (3) During the car accident trial, Mr. Ireland argued it was the arm raising of State Farm claim rep., Mona Drolc, which caused Rita Fullmer's RSD. (4) During the arm raising trial, Mr. Ireland represented State Farm. (5) During the arm rais-

    ing trial, Mr. Ireland presented the medical testimony of Dr. Boyer who concluded the most likely cause of Rita Fullmer's RSD was the car accident caused by Ms. Beuning's negligence. (6) During the arm raising trial, Mr. Ireland argued to the jury that the cause of Rita Fullmer's RSD was the car accident caused by Ms. Beuning's negligence.

    Additionally, if Ireland's motion to withdraw was granted, Fullmer wanted an agreement or order that Cline could not invoke SDCL § 15–12–29 in an effort to disqualify Judge Grosshans, since more than 5 days had elapsed since Cline's notice of appearance.

Farm could adequately protect Beuning by agreeing to be responsible for any money judgment against her, in the same manner that it has already agreed to be responsible for any judgment against its former employee Drolc; and (3) the addition of a third defense attorney would result in additional delay, expense and prejudice to the plaintiff Fullmer. In sum, the court stated that granting the motion to withdraw "would interfere with the efficient and proper functioning of the Court in the remand of this case for retrial."

Following the trial court's denial of Ireland's motion to withdraw, Ireland filed, on behalf of State Farm, a motion for change of judge. Attorney Kappelman joined that motion on behalf of defendant Drolc. The motion came before circuit Judge Fitzgerald, who refused to rule on it. State Farm and Drolc ask this court to rule on said motion.

### ANALYSIS AND DECISION

1. *Ireland's Motion to Withdraw as Counsel for Beuning*

■ The South Dakota Rules of Professional Conduct, SDCL § 16–18 Appx., Rule 1.7 (1993) provide in pertinent part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

S.D. RULES OF PROFESSIONAL CONDUCT Rule 1.7(b). The Comment to the rule explains its application:

> Simultaneous representation of parties whose interests in litigation may conflict, such as ... co-defendants, is governed by paragraph (b). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.

Rule 1.7 cmt. Thus, it appears that under the facts of this case, a conflict has developed. When Ireland, on behalf of State Farm, elicited testimony from Dr. Boyer that Fullmer's RSD was caused by Beuning's negligence, this resulted in an "incompatibility in positions in relation to an opposing party," quoting the language of the comment to the rule. This is an impermissible conflict, and Ireland's motion to withdraw should be granted.

In light of our examination of the voluminous record in this case, continued analysis is in order. Other possible conflicts may exist, as the following pertinent history reveals.

As stated previously, on July 14, 1989, Ireland answered the complaint on behalf of all three defendants—State Farm, Drolc and Beuning. On February 11, 1991, Kappelman first appeared for Drolc, paid by State Farm, who has also agreed to pay any judgment against Drolc. Throughout the proceedings, Drolc maintained that she "never touched" Fullmer. After listening to the opening statements on July 24, 1991, the first day of the battery trial, court reporter Pamela McMahon (McMahon) came forward to inform the trial court that she recalled overhearing a conversation between Cline and Drolc, wherein Drolc admitted to Cline that she (Drolc) had raised Fullmer's arm. McMahon was deposed that night; and stated that on February 23, 1989, she overheard that conversation. Following the deposition, Ireland angrily stated, to McMahon's employer and in McMahon's presence, that "from now on, under no circumstances, is Pam to ever be a court reporter in any case that I'm involved in." Five days later, on July 29, 1991, McMahon testified at trial to her recollections of the overheard admissions of Drolc. During direct examination, the record reveals that McMahon appeared to be rather emotional, and the jury was sent from the courtroom. The trial court was then informed of Ireland's statement, which the court described as "intimidation of a prospec-

tive witness."[2] Although Ireland apologized and waived cross-examination of McMahon, there was no other sanction. Then, also on July 29, Kappelman called Cline as a witness for Drolc in the battery trial, so that Cline could testify as to her recollections (or lack thereof) of the conversation between herself and Drolc. Also as stated previously, Ireland's motion to withdraw was filed on April 8, 1993; and on May 10, 1993, Cline filed a notice of appearance on behalf of Beuning.

■ As a result of our opinion in *Fullmer I*, the new trial is limited to the medical causation of Fullmer's RSD and resulting damages, plus whatever punitive damages, if any, should be awarded against defendants State Farm and Drolc; and the issue of whether Drolc was acting within the scope of her employment.[3] Because the issues are so limited, it appears that the issue of *whether* Drolc raised Fullmer's arm will not be presented in the retrial; thus, it should not be necessary for Cline to again be called as a witness. However, Cline has already served as a witness for Drolc—*a co-defendant in a position adverse to Beuning*—in the first battery trial. Further, there is no indication in the record that Beuning has any knowledge that Cline was a witness for Drolc. Obviously, before Beuning consents to having Cline serve as her lawyer, Beuning should be informed that Cline served as a witness for State Farm and Drolc in the earlier trial.

We continue our analysis of this situation by noting additional comments to Rule 1.7. In regard to payment of lawyers, the Comment continues:

A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See Rule 1.8(f). For example, *when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence.*

Rule 1.7 cmt. (emphasis added). SDCL § 16–18 Appx., Rule 1.8(f) provides:

A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation; (2) *there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and* (3) information relating to representation of a client is protected as required by Rule 1.6.

S.D. Rules of Professional Conduct Rule 1.8(f) (emphasis added).

There is some indication that Beuning's attorney may, in reality, be taking direction from Ireland and State Farm. In his brief in support of his motion to withdraw, Ireland states that newly-hired attorney Cline is "not taking direction from State Farm," but rather is "taking all direction from [Beuning]." However, Beuning did not seek out Cline as an attorney; rather, Cline was contacted by State Farm, and paid by State Farm. Cline informed the court that she was taking no direction from State Farm in her representation of Beuning. However, after the point in time that Cline was hired by State Farm, Ireland repeatedly emphasized that one reason he should be allowed to withdraw was so that Beuning could hire her own medical expert witnesses; noting that "*we* would want to use an expert from Biodynamics Research out of Texas, for an analysis of the force of impact and give testimony as to whether or not the car accident could in any way account for the injury complained of to the left shoulder and left arm." (Emphasis added.) The trial judge reacted to this argument by stating that Ireland's argument "lends to my conclusion that really it's Mr. Ireland and State Farm who is directing this search for additional expert evidence." Ire-

---

2. We note that SDCL § 22–11–19 states in pertinent part: "A person who threatens to injure any person or property, or with intent to influence a witness ... to induce the witness to: ... (1) Testify falsely; (2) Withhold any testimony, information, document or thing; ... is guilty of tampering with a witness. Tampering with a witness is a Class 4 felony." *Id.*

3. We also stated that the new trial is to include issues as "otherwise ... outlined in the trial court's order." *Fullmer I*, 498 N.W.2d at 363.

land continues this argument in his briefs to this court. We note the statement in State Farm's reply brief that Beuning "is entitled to hire her own expert witness, i.e., Biodynamic Research, to give an opinion as to whether or not the car accident caused [Fullmer's] RSD." Ireland attaches to this reply brief—as an appendix including materials *outside* of the settled record [4]—a letter from Biodynamic Research Corporation, addressed to Ireland and offering a report of preliminary opinions based on materials apparently sent to him by Ireland. In this case, steps must be taken to assure that there is no interference with the independence of professional judgment of the counsel hired by State Farm for Beuning.

■ Further, in granting Ireland's motion to withdraw as counsel for Beuning, we must additionally note Rule 1.9(a) in the Code of Professional Conduct:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client *unless the former client consents after consultation.*

S.D. RULES OF PROFESSIONAL CONDUCT Rule 1.9(a). If Ireland remains in the case, as Beuning's former counsel, Ireland would now represent State Farm in a position that is materially adverse to Beuning. Although the record contains a statement signed by Beuning that she consents to Ireland's withdrawal as *her* counsel of record, there is nothing to show that she consents to Ireland's remaining in the case, despite the fact that he will now represent an interest adverse to her own. Clearly, in accordance with Rule 1.9(a), Beuning must be advised by *independent* counsel on this issue.

### 2. Motion for Change of Judge

It is unusual for this court to be presented with a motion for a change of judge. We deny this motion for several reasons.

■ First, it is our view that State Farm and Drolc (who join in this motion) have waived their right to a change of judge by submitting to the jurisdiction of the court. SDCL § 15–12–24; *Tri–State Refining and Investment Co. v. Apaloosa Co.*, 452 N.W.2d 104, 108 (S.D.1990); *In re Establishing Certain Territorial Electric Boundaries Within S.D.*, 318 N.W.2d 118, 120–21 (S.D.1982).

■ Secondly, State Farm and Drolc did not follow the statutory procedure [5] for change of judge. Instead, following Judge Grosshans' denial of Ireland's motion to withdraw, State Farm filed a motion for change of judge. The presiding circuit judge was unable to hear the motion due to a family medical emergency, and it was assigned to Judge John Fitzgerald, who refused to hear the motion on the basis that he had no jurisdiction as a circuit court judge to remove another circuit court judge from a case. Thus, the motion has not been heard at the trial level, nor is there any signed order on this motion from which to take an appeal. As a result, this motion is before us without statutory authority.

Appeals to this court from the circuit court may be taken only as provided by statute. SDCL 15–26A–3.[6] "This court has consis-

4. Ireland should take note of SDCL § 15–26A–60(8) (Supp.1993) which provides in pertinent part:
   The brief of the appellant shall contain under appropriate headings and in the order here indicated:
   . . . .
   (8) Appendix ... [which] may include the judgment, order or decision in question, any relevant portions of the pleadings, instructions, findings or opinion, and any other *parts of the record* to which the parties wish to direct the particular attention of the Court[.]
   See also SDCL § 15–26A–62 (Supp.1993) ("The appellant may file a brief in reply to the brief of appellee. The reply brief must be confined to

new matter raised in the brief of the appellee[.]"). Attaching materials to the reply brief which are not a part of the record violate the appellate rules of civil procedure.

5. The statutory provisions for change of judge are found in SDCL §§ 15–12–19 through –37.

6. SDCL 15–26A–3 provides:
   Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:
   (1) A judgment;
   (2) An order affecting a substantial right, made in any action and prevents a judgment from which an appeal might be taken;

tently held that the right to appeal is statutory and no appeal may be taken unless a statute clearly authorizes one." *South Dakota Dep't of Transp. v. Freeman,* 378 N.W.2d 241 (S.D.1985). This holding is supported by a long line of precedent from this court. *See Oahe Enter., Inc. v. Golden,* 88 S.D. 296, 299, 218 N.W.2d 485, 487 (1974) ("An attempted appeal from an order from which no appeal lies is a nullity [citation omitted] and confers no jurisdiction on this court, except to dismiss it."); *Builders Specialties Co. v. Swanson,* 82 S.D. 663, 665, 152 N.W.2d 550, 551 (1967) (stating that, "The right of appeal is statutory"); *County Sch. Bd. v. Cottonwood Sch. Dist. No. 41,* 81 S.D. 530, 531, 137 N.W.2d 882, 883 (1965) ("The right of appeal is purely statutory and unless that right exists, the court is without jurisdiction to determine the merits.") (citing *In re Swanson's Estate,* 71 S.D. 622, 623–24, 28 N.W.2d 663, 663 (1947)); *In re Johnson's Estate,* 66 S.D. 256, 258, 281 N.W. 113, 114 (1938) ("The right of appeal is statutory and can be exercised only when and as authorized by statute") (citations omitted).

■ In addition to the lack of a statutory basis for this appeal, there was no ruling on this motion at the trial court level; thus there is no order or judgment from which an appeal may be taken. We have repeatedly stated that we will not decide an issue in this court until the trial court has had an opportunity to pass upon it. *Hawkins v. Peterson,* 474 N.W.2d 90, 95 (S.D.1991) ("We will not consider issues raised for the first time on appeal.") (citing *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981)); *Bottum v. Herr,* 83 S.D. 542, 548, 162 N.W.2d 880, 883 (1968) (stating that a party "cannot now assert error on matters not considered by or ruled upon in the trial court"); *Schull Constr. Co. v. Koenig,* 80 S.D. 224, 229, 121 N.W.2d 559, 561 (1963) ("A reviewing court will not consider matters not properly before it or matters not determined by the trial court") (citations omitted). If given the opportunity, the trial judge may decide of his own accord to recuse himself from further proceedings in this matter.

■ Outside of the statutory scheme, it is only in the most extreme circumstances that we have taken the initiative to direct a presiding circuit judge to reassign a case; that being where we could only conclude that the circuit court ignored our specific direction. *Sarver v. Dathe,* 479 N.W.2d 913, 916 (S.D. 1992) [*Sarver II* ].[7] We have also stated that:

> Absent a specific statute requiring it, the removal of a trial judge on retrial after a remand from this court should be exercised sparingly, and only where the remedy by an appeal would be wholly inadequate.... It must be remembered that the jury, as the ultimate fact finder, will

(3) An order granting a new trial;
(4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment;
(5) An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;
(6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding; or
(7) An order entered on a motion pursuant to § 15–6–11.
*Id.*

7. The circumstances of *Sarver* required the extreme action taken. In the first appeal of that matter (*Sarver v. Dathe,* 439 N.W.2d 548 (S.D. 1989) *[Sarver I]* ) we remanded with specific directions to the lower court on award of attorney fees and recalculation of child support. Following remand, "It took the trial judge two years to enter the order granting the attorney's fees awarded in Mother's first successful appeal." *Sarver II,* 479 N.W.2d at 915. Then, the trial court granted Father's "*ex parte* motion to quash the order implementing this Court's award of Mother's attorney's fees.... It was improper for the trial court to grant such an unjustifiable *ex parte* motion." *Id.* We concluded that, "There is simply no excuse for the untimely handling of this case by the trial court.... The circuit court did not handle this case in a thorough or professional manner.... Because we want to be sure this case is finally and fairly resolved on remand, we direct the [reassignment of] this case to a different circuit court judge within that circuit." *Id.* at 915–16.

make the decisive judgment as to credibility of the witnesses and the weight of the evidence.

*Arcon Constr. Co. v. South Dakota Cement Plant,* 382 N.W.2d 668, 671 (S.D.1986). Likewise, this case on remand will be decided not by a judge, but by a jury as the ultimate factfinders. In *Fullmer I,* we noted some specific instructions to the trial judge on remand, and we have confidence that those instructions will be followed. 498 N.W.2d at 363 n. 7. State Farm and Drolc have presented no evidence that the circuit judge in this trial should be removed. Additionally, we find no merit in State Farm's repeated assertion that denial of attorney Ireland's motion to withdraw as counsel "is an attempt by the trial judge to set up a bad faith claim between State Farm's insured, Joyce Hamond Beuning and State Farm." The trial judge only granted State Farm's original motion to bifurcate the trials. It was not the trial judge who elected to follow a strategy of presenting evidence adverse to an insured; rather, Ireland and State Farm elicited the adverse testimony, taking a position contrary to Beuning's interests. Whatever the consequences of that chosen strategy might be, it is State Farm and Ireland that must live with them.

This matter is reversed in part, and remanded to the circuit court for further proceedings in accordance with this opinion.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I generally concur on the issue concerning attorney Ireland's motion to withdraw as counsel for Beuning.

I dissent on Issue 2. First, reference is made to three sentences in the majority writing: "The presiding circuit judge was unable to hear the motion due to a family medical emergency, and it was assigned to Judge John Fitzgerald, who refused to hear the motion on the basis that he had no jurisdiction as a circuit court judge to remove another circuit court judge from a case. Thus, the motion has not been heard at the trial level, nor is there any signed order on this motion from which to take an appeal. As a result, this motion is before us without statutory authority." I agree that there is no order to review on appeal; however, the senior judge of the circuit had jurisdiction to remove Judge Grosshans *or* to at least rule on the motion. Otherwise, why does SDCL ch. 15–12, particularly § 15–12–32 exist? It expressly authorizes the senior judge of the circuit to act:

> The presiding judge of the circuit court or in his absence or disqualification as the judge sought to be changed, the senior judge of the circuit shall review the affidavit and certification, if any, and it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective, shall assign some other circuit judge or magistrate of that circuit as is appropriate to preside in such action, by filing an order of such appointment with the clerk of the court of the county wherein said action is pending. From the filing of such order the judge or magistrate herein designated shall have full power, authority and jurisdiction to proceed in the matter.

Despite the majority writing's authorities to the contrary, in my opinion, it would be in the best interests of justice for these parties to have a new judge preside over this case, a case that has now continued over four years and involved two separate trials and two appeals before this Court. In the first appeal, Judge Grosshans was reversed. He has now been reversed again. There has been a great deal of high emotions and conflict between this trial judge and counsel in this case. As we previously specified, the trial judge left the court room while attorney Ireland was continuing to make a record. Attorney Kappelman personally pleaded before this Court that the trial judge be removed because of the bias and prejudice of the trial judge. "He threatened to put me in jail simply because I took a [legal] position." Attorney Kappelman is fearful of appearing before this trial judge again. Without benefit of reciting other language in our previous

opinion concerning remarks of the trial judge, it becomes evident that the trial judge has not remained aloft from the fray. In *Tesch v. Tesch*, 399 N.W.2d 880 (S.D.1987), this special writer, writing for a unanimous Court, affirmed a decision by this same trial judge but cautioned him concerning his obligation to remain neutral:

Finally, we shall mention the numerous gratuitous questions asked by the trial court. Such a practice should be avoided. A trial judge must not be in the arena of questioning—nay—he must preside over it that he may neutrally rule.

*Tesch*, 399 N.W.2d at 885.

Reference is made to the Code of Judicial Conduct, Canon 3 A(4): "A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity . . ." For authority, I refer to *State v. Kaiser*, 504 N.W.2d 96, 100 (S.D.1993). Therein, we declared, "It goes without saying that the actions and words of the trial judge have a definite impact on the jury." I also rely on the case of *Blomquist v. Clague*, 290 N.W.2d 235 (N.D.1980), where the Supreme Court of North Dakota found it to be in the best interests of the integrity and fairness of the judicial process to remove a circuit court judge. It is to be remembered that this Court previously expressed that this trial judge should no longer inject his personal frustrations and biases into the proceedings. As I have said, it would be in the best interests of justice for this trial judge to remove himself from this case and I refer to the same Code of Judicial Conduct, Canon 3 E. Failing to remove himself, this Court should enter an order to remove him from the case so that the best interests of justice will be sought on an even playing field. Several attorneys in this case, representing different parties, have filed briefs requesting that this trial judge be removed. They are Officers of the Court. As such, their representations and supplications are entitled to recognition under these facts.

Remand instructions were not followed. This Court has the inherent power—and the duty—to see that the administration of justice is fair. And it also has inherent power to superintend its internal management and carry out its constitutionally-mandated duties. For is it not true that the highest court of any state, such as a Supreme Court of this state, and particularly where there is a Unified Judicial System as we constitutionally have in South Dakota, has the inherent power to see that a court within its system protect its dignity, independence and integrity so as to make its lawful actions effective, fair and just for the citizens over whom it bears a responsibility and to see that they are treated fair?

The term "inherent power of the judiciary" means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court.

*In re Integration of the Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N.W. 265, 267 (1937).

Failing to recuse himself, I vote to remove him. Thus, I would employ the inherent powers doctrine as a protective device on behalf of the populace as it is basic to the concept of any court and it is implicit in the provisions of our State Constitution which created a judicial branch. *See In re Greathouse*, 189 Minn. 51, 248 N.W. 735 (1933).